RADER, Circuit Judge,
dissenting from the denial of rehearing en banc.
I respectfully dissent from the decision to deny rehearing.
In this case, the trial court made the factual determination that the besylate salt form of amlodipine had unexpected superi- or properties over the closest prior art. Accordingly, the underlying patent (’303) was valid and nonobvious. Three separate district courts held trials involving the '303 patent. Indeed, each of those three different district court judges came to the same *1384 factual conclusion regarding the nonobvi-ousness of amlodipine besylate. Because the factual determinations in the case below were not clearly erroneous, this court should have deferred to the district court’s factual findings.
As the testimony indicated, the properties of new pharmaceutical salt forms are entirely unpredictable. Even the Berge reference on which the panel relied clearly states: “Unfortunately there is no reliable way of predicting the influence of a particular salt species on the behavior of the parent compound.” The district court agreed and made the factual determination that the superior properties of amlodipine besylate over the prior art (increased stability and decreased stickiness) were indeed unexpected — a finding that deserved deference.
Furthermore “obvious to try” jurisprudence has a very limited application in cases of this nature. With unpredictable pharmaceutical inventions, this court more wisely employs a reasonable expectation of success analysis. In this case, salt selection is unpredictable, thus rebutting, as most other courts found, any reasonable expectation of success. Although the panel gives “lip service” to the principle that “obvious to try” does not work in this field, it nonetheless appears to be the basis for its decision in this case. In addition, the panel discerned a reasonable expectation of success by giving undue emphasis to the inventor’s subjective hopes for the outcome of his experiments.
The panel also mistakenly determined that the superior properties of the besylate did not overcome a prima facie case of obviousness because they showed no superior therapeutic value — the maleate salt form of amlodipine worked just as well as the besylate form in clinical trials. Therapeutic value, however, is just one property of a pharmaceutical. Other properties, such as solubility, stability, hygroscopicity, and processability, must also play a role in the analysis of advantages. The superior properties of the besylate salt form of amlodipine, overcame the stability and stickiness problems that existed with the maleate salt form and created a superior formulation. Although the maleate salt form was also therapeutically effective, the besylate form was still a significant improvement because it overcame the stability and processing problems that could have prevented successful commercial marketing.
The panel also found that amlodipine besylate was not patentable since it was made by a routine testing or a “well known problem solving strategy.” This clearly violates the statutory mandate that “pat-entability shall not be negatived by manner in which the invention was made.” 35 U.S.C. 103(a). Many if not most pharmaceutical inventions are discovered through a routine screening protocol or through an established trial and error process. Pharmaceutical inventions discovered by these routine screening methods include not only new formulations and salt forms, but also include the active pharmaceutical compounds themselves. Thus, this decision calls into question countless pharmaceutical patents, which in turn could have a profoundly negative effect on investments into the design and development of new life-saving pharmaceuticals. With many questions about this case, I would have reheard it en banc.